UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
GERARD HENRY,

                        Plaintiff,

                                          <u>MEMORANDUM & ORDER</u>
          -against-                       13-CV-0494(JS)(WDW)

CONCORD LIMOUSINE, INC.; CONCORD
LIMOUSINE I, LCC; ALEX GAVRILOV; and
IRINA GAVRILOV, individually,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Jodi Jill Jaffe, Esq.
                    Lawrence Office Park
                    Building 2, Suite 220
                    168 Franklin Corner Road
                    Lawrenceville, NJ 08648

                    Alan Nathan Walkow, Esq.
                    Walkow Law Office
                    901 West Park Avenue, Suite 202
                    Long Branch, NJ 07740

For Defendants:     Eric Brian Kaviar, Esq.
                    712 Third Avenue
                    Brooklyn, NY 11232

SEYBERT, District Judge:

          Plaintiff Gerard Henry ("Plaintiff") commenced this

action against defendants Concord Limousine, Inc., Concord

Limousine 1, LLC (collectively, "Concord"), Alex Gavrilov, and

Irina Gavrilov (together with Alex Gavrilov and Concord,

"Defendants") to recover under the Fair Labor Standards Act and

the New York Labor Law for alleged unpaid wages and overtime.

Defendants filed an Answer and Counterclaim that includes one

counterclaim seeking to disgorge financial kickbacks Plaintiff allegedly received during the course of his employment. Presently before the Court are (1) Plaintiff's motion to dismiss the counterclaim for lack of subject matter jurisdiction; (2) Plaintiff's request to strike paragraph 10 of the counterclaim; and (3) Defendants' motion to amend their initial Answer and Counterclaim. For the reasons set forth below, Plaintiff's motion to dismiss is DENIED, Defendants' motion to amend is GRANTED IN PART and DENIED IN PART, and Plaintiff's request to strike is DENIED AS MOOT.

<u>BACKGROUND</u>

On January 28, 2013, Plaintiff, who formerly worked either as a dispatcher (according to Plaintiff) or an "executive managing others in the dispatch facility" (according to Defendants) at Defendants' transportation business, commenced this action against Defendants to recover under the Fair Labor Standards Act and the New York Labor Law for alleged unpaid wages and overtime. (Docket Entry 1.)

On April 14, 2013, Defendants filed an Answer and Counterclaim asserting one counterclaim seeking to disgorge bribes Plaintiff allegedly received during the course of his employment (the "Disgorgement Counterclaim"). (Docket Entry 10.) On May 5, 2013, Plaintiff moved to dismiss Defendants' Disgorgement Counterclaim and also asked the Court to strike paragraph 10 of

2

the Disgorgement Counterclaim.  (Docket Entry 11.)  Before the Court could address Plaintiff's pending motion to dismiss and request to strike, however, Defendants filed a motion for leave to amend their Answer and Counterclaim on November 21, 2013.[1]  The Court will first summarize the allegations of Defendants' Disgorgement Counterclaim before highlighting some of the key amendments contained in Defendants' proposed Amended Answer and Counterclaim.

I.   The Disgorgement Counterclaim

Concord is a transportation company licensed as a dispatch facility by the New York City Taxi and Limousine Commission.[2]   (Countercl., Docket Entry 10, ¶ 8.)   Concord

---

[1] Defendants apparently sought Plaintiff's consent to amend but Plaintiff refused.  (See Kaviar Certification, Docket Entry 19-1, ¶ 8.)  However, despite not granting consent to Defendants, Plaintiff has not filed an opposition to Defendants' motion to amend.

[2] As noted above, there are two related company defendants in this action--Concord Limousine, Inc. and Concord Limousine 1, LLC.  Defendants' initial counterclaim identified only Concord Limousine, Inc. as a counterclaim defendant and requested damages only on behalf of Concord Limousine, Inc.  (See Countercl. ¶¶ 7-11.)  In addition, although counsel electronically filed the initial Answer and Counterclaim on behalf of all Defendants, the introductory paragraph to the filed document identified only Concord Limousine, Inc. as answering Plaintiff's Complaint.  Defendants' proposed Amended Answer and Counterclaim addresses these errors by including all four Defendants in the introductory paragraph and also by including Concord Limousine 1, LLC as a counterclaim defendant.  Plaintiff did not bring these errors to the Court's attention when it filed its motion to dismiss the initial counterclaim and, in fact, referred to the Answer and Counterclaim as being

essentially acts as a middle man between its customers and "independent contractors/drivers," with whom Concord "has agreements." (Countercl. ¶ 8.) The drivers let Concord know when they are available to pick up a customer and Concord sends the drivers available transportation jobs. (Countercl. ¶¶ 8-9.) Concord company policy provides that transportation jobs are to be dispatched to the drivers on a first-come, first-served basis. (Countercl. ¶ 9.) Accordingly, pursuant to the company policy, Concord employees are supposed to dispatch the first available job to the first driver to contact Concord. The driver then "receives remuneration depending on the length of the ride." (Countercl. ¶ 8.)

On or about September 1, 2009, Concord hired Plaintiff, and "thereafter he was elevated to the position of an executive managing others in the dispatch facility of Concord." (Countercl. ¶ 7.) Defendants allege that Plaintiff, in his role as an executive, violated Concord's company policy of dispatching jobs on a first-come, first-served basis by giving drivers transportation jobs out of turn in exchange for financial kickbacks. (Countercl. ¶ 9.) They further allege that Concord warned Plaintiff that "this was against the company policy, a theft

_____

asserted by all Defendants. Accordingly, the Court construes the initial answer as properly filed by all Defendants and the initial counterclaim as properly asserted by both Concord companies.

4

against the non participating [sic] drivers, and plaintiff was instructed not to do so by his supervisor, Vice President Atif Waheed." (Countercl. ¶ 9.)

Despite the warning, Plaintiff continued to award jobs out of turn in exchange for kickbacks. (Countercl. ¶ 9.) On or about November 6, 2012, Concord terminated Plaintiff following Plaintiff's admission that he was "taking these bribes from drivers to be given rides out of turn . . . ." (Countercl. ¶ 9.)

Paragraph 10 of the Disgorgement Counterclaim alleges that Plaintiff applied for unemployment benefits after his separation from Concord but that the New York State Department of Labor determined that Plaintiff was indeed diverting transportation jobs for financial kickbacks. Paragraph 10 specifically alleges:

> The plaintiff next applied for unemployment benefits after his separation from Concord. However after a review of the information by the Department of Labor of New York ("DOL") by notice of determination to claimant the DOL determined that he was 'accepting payments from drivers for jobs", and that he admitted doing so. Based upon this finding the DOL held that his actions were detrimental to the employer's interest and rose to the level of misconduct. The plaintiff has not appealed this determination. Upon information and belief the time to appeal this determination has passed.

(Countercl. ¶ 10.) Based on the foregoing allegations, Concord seeks as damages "the amounts of financial diversions the plaintiff has made." (Countercl. ¶ 11.)

II.  The Proposed Amended Answer and Counterclaim

On November 21, 2013, Defendants filed a motion for leave to amend their Answer and Counterclaim.  Defendants' proposed Amended Answer and Counterclaim generally contains the same factual allegations as the initial Answer and Counterclaim. Briefly, however, the Court takes this opportunity to highlight some of the key amendments contained in the proposed Amended Answer and Counterclaim.

The proposed pleading amplifies the facts of the Disgorgement Counterclaim by describing specific transactions in which Plaintiff awarded transportation jobs in exchange for kickbacks.  (Proposed Amended Answer and Counterclaim ("PAAC"), Docket Entry 19-5, ¶ 15.)  It also adds two new causes of action for punitive damages and nominal damages.  (PAAC ¶¶ 17-19.)

With respect to the answer, the proposed pleading adds three new affirmative defenses of set-off, failure to state a cause of action against defendant Alex Gavrilov, and failure to state a cause of action against defendant Irina Gavrilov.  (PAAC ¶¶ 6, 8-11.)  It also deletes the allegations of paragraph 10 of the Disgorgement Counterclaim regarding Plaintiff's proceeding before the Department of Labor and seeks to convert those allegations to the affirmative defenses of collateral estoppel and res judicata. (PAAC ¶¶ 8-9.)

The Court will first address Plaintiff's motion to dismiss the Disgorgement Counterclaim in conjunction with Defendants' motion to amend the Disgorgement Counterclaim and to add new counterclaims for punitive and nominal damages. The Court will then turn to Defendants' motion to amend the answer to add affirmative defenses.

I.  **Plaintiff's Motion to Dismiss and Defendants' Motion to Amend the Disgorgement Counterclaim and to Add New Counterclaims**

Plaintiff moves to dismiss the Disgorgement Counterclaim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that Defendants lack standing to assert it. Although Defendants have since moved for leave to amend, the proposed amendments to the Disgorgement Counterclaim only seek (1) to amplify the facts supporting it and (2) to delete paragraph 10 of the Disgorgement Counterclaim. Plaintiff has not opposed the motion to amend. The Court therefore GRANTS Defendants' motion for leave to amend insofar as it amplifies the facts and deletes paragraph 10. See Gov't of India v. Cargill, Inc., 445 F. Supp. 714, 723 (S.D.N.Y. 1978) (granting motion for leave to amend complaint where (1) amended complaint only amplified the allegations in the original complaint and in "no material way alter[ed] the basic charges leveled against [defendant]" and (2) defendant failed to make a showing that the amendments would

prejudice its defense).  Accordingly, Plaintiff's motion to strike paragraph 10 of the Disgorgement Counterclaim is DENIED AS MOOT, and the Court considers the amended counterclaim to be the operative claim for the purpose of deciding Plaintiff's motion to dismiss for lack of standing.

A.    Legal Standards of Review

1.    Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)); see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).  The Court must accept as true the factual allegations contained in the counterclaim, but it will not draw argumentative inferences in favor of the counterclaim defendant because subject matter jurisdiction must be shown affirmatively.  See Morrison, 547 F.3d at 170 (stating principles with respect to facts alleged in a complaint); Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) ("[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn.").  The party asserting jurisdiction bears the burden of establishing subject matter

jurisdiction by a preponderance of the evidence.  Morrison, 547 F.3d at 170.

    2.  Motion to Amend

        Courts should grant leave to amend a pleading "when justice so requires."  FED. R. CIV. P. 15(a)(2).  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).  To determine whether an amended claim is futile, courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal, 282 F.3d 83, 88 (2d Cir. 2002).

    B.  Concord Has Standing to Assert the Disgorgement Counterclaim

        Concord alleges that Plaintiff violated Concord company policy by dispatching transportation jobs to drivers out of turn in exchange for financial kickbacks.  (PAAC ¶ 14.)  Concord seeks to disgorge the alleged kickbacks that Plaintiff received.  (PAAC ¶ 16.)  Plaintiff argues that Concord lacks standing to bring this claim because the allegations that "Plaintiff received 'financial kickbacks from drivers' and that Plaintiff committed 'theft against the non participating [sic] drivers'. . . . fail to reflect a concrete and personal injury to Defendants."  (Pl.'s Br., Docket Entry 11-1, at 4.)  The Court disagrees.

Under Article III of the United States Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984); see also U.S. CONST., art. III, § 2. "This limitation is effectuated through the requirement of standing." Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471-72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)); see also United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990). There are three requirements to establish Article III standing: "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Cooper, 577 F.3d at 489; see also Allen, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

New York law recognizes the "faithless servant" doctrine. Under this doctrine, which is grounded in the law of agency, an employee "is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost

good faith and loyalty in the performance of his duties.'" Phansalkar v. Anderson Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (quoting W. Elec. Co. v. Brenner, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977)). A faithless employee forfeits the right to compensation during the period of disloyalty even when "the services were beneficial to the principal or [when] the principal suffered no provable damage as a result of the breach of fidelity by the agent." Id. (quoting Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 929, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977)). Thus, "the act of being disloyal to one's employer is itself sufficient grounds for disgorging all compensation received during the period of liability, and does not depend on actual harm to the employer." Consol. Edison Co. v. Zebler, No. 603678/09, 2013 WL 4467291, at *2 (N.Y. Sup. Ct. Aug. 20, 2013).

Of relevance here, under the faithless servant doctrine, an employer also is entitled to disgorge the value of any bribes or kickbacks received by a faithless employee. British Am. & E. Co. v. Wirth Ltd., 592 F.2d 75, 79 (2d Cir. 1979) ("[W]here there is an agency relationship, the principal is entitled to recover any monies paid as commercial bribes to his agent."); W. Elec. Co., 41 N.Y.2d at 295, 392 N.Y.S.2d at 412, 360 N.E.2d at 1094 ("[A]ny compensation secretly or improperly received from others beyond the compensation to which the employee is entitled is deemed to be held by him on a constructive trust for his employer.");

<u>Wechsler v. Bowman</u>, 285 N.Y. 284, 292, 34 N.E.2d 322, 326 (1941) (holding that "the principal is entitled to recover from his unfaithful agent any commission paid by the principal and all moneys paid by a purchaser whether as a bribe to the agent of the seller or otherwise . . . ."); <u>Zebler</u>, 2013 WL 4467291, at *3-5 (granting employer's motion to recover $50,000 obtained by employee through "bribery-kickback scheme"). Thus, contrary to Plaintiff's argument, Concord clearly has standing to assert a claim against Plaintiff seeking disgorgement of the alleged kickbacks received by Plaintiff. Accordingly, Plaintiff's motion to dismiss the Disgorgement Counterclaim for lack of standing is DENIED.

C. <u>Defendants' Proposed Second and Third Counterclaims for Punitive and Nominal Damages Are Futile</u>

Defendants also seek leave to add two new counterclaims for punitive and nominal damages. Because these counterclaims are futile, Defendants' motion for leave to add them is DENIED.[3]

Defendants' proposed Second Counterclaim alleges a claim for punitive damages. (PAAC ¶¶ 17-18.) However, it is well settled under New York law that punitive damages may not be asserted as a separate cause of action. <u>Martin v. Dickson</u>, 100 F. App'x 14, 16 (2d Cir. 2004) (affirming district court's dismissal

---

[3] It should be noted that Defendants make no effort whatsoever to explain why the proposed Second and Third Counterclaims are not futile.

of separate cause of action for punitive damages because "there is no separate cause of action in New York for punitive damages"); Weir Metro Ambu-Serv., Inc. v. Turner, 57 N.Y.2d 911, 912, 456 N.Y.S.2d 757, 757, 442 N.E.2d 1268, 1268 (1982) ("[P]unitive damages may not be sought as a separate cause of action."); Paisley v. Coin Device Corp., 5 A.D.3d 748, 750, 773 N.Y.S.2d 582, 582 (2nd Dep't 2004) (dismissing cause of action for punitive damages because "no separate cause of action for punitive damages lies for pleading purposes"). Defendants' proposed counterclaim for punitive damages is therefore futile. Accordingly, Defendants' motion for leave to add a separate cause of action for punitive damages is DENIED.

Defendants' proposed Third Counterclaim for nominal damages is similarly futile. (PAAC ¶ 19.) Nominal damages are a form of relief; they do not constitute a separate cause of action. See BLACK'S LAW DICTIONARY 392 (6th ed. 1990) (defining nominal damages as a "trifling sum awarded to a plaintiff in an action where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of [plaintiff's] rights or a breach of the defendant's duty, or in cases where, although there has been a real injury, the plaintiff's evidence fails to show its amount"). Defendants do not cite any authority suggesting otherwise. Defendants' proposed counterclaim for nominal damages is therefore futile. Accordingly, Defendants' motion for leave to

amend to add a separate cause of action for nominal damages is DENIED.

III. <u>Defendants' Motion to Amend the Answer</u>

Defendants also move for leave to amend their answer to assert five new affirmative defenses. The Court will first set forth the standards for a motion for leave to add affirmative defenses before turning to each proposed affirmative defense.

A defendant does not need to plead all known affirmative defenses at the time of the first answer. <u>Ragin v. Harry Macklowe Real Estate Co.</u>, 126 F.R.D. 475, 478 (S.D.N.Y. 1989). As long as the proposed amendment does not prejudice the plaintiff, a defendant is not precluded from amending the answer to include affirmative defenses about which the defendant had knowledge. <u>Id.</u>; <u>Tavares v. Lawrence & Memorial Hosp.</u>, No. 11-CV-770, 2013 WL 1385266, at *4 (D. Conn. 2013). A defendant's motion to amend "should be denied only for such reasons as undue delay, bad faith or undue prejudice to the opposing party." <u>Ragin</u>, 126 F.R.D. at 478 (internal quotation marks and citation omitted). Furthermore, "unless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." <u>Goldberg v. Roth</u>, No. 99-CV-11591, 2001 WL 1622201, at *6 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).

As previously noted, Plaintiff has not opposed Defendants' motion for leave to amend. The Court does not find that Defendants' proposed amendments are the product of any proven undue delay or bad faith. Moreover, there is no evidence that the proposed amendments will result in prejudice to Plaintiff. Thus, the only issue, then, is whether Defendants' affirmative defenses present "at least a colorable defense." Ragin, 126 F.R.D. at 479.

A. Defendants' Proposed Second Affirmative Defense of a Set-Off Raises a Colorable Defense

Although not eloquently pleaded, Defendants' proposed Second Affirmative Defense appears to assert that Plaintiff's claims for unpaid wages should be set off by the amount of wages that Concord paid Plaintiff during the period of Plaintiff's alleged disloyalty. (See PAAC ¶ 6 ("Had defendants known that plaintiff acted disloyal during his employment, the defendants would not have paid the plaintiff wages that plaintiff would have otherwise been entitled to during the period of disloyalty.").) As discussed above, under the faithless servant doctrine, "a faithless employee forfeits the right to compensation, at least for services that are tainted by the dishonesty and perhaps more broadly." Markbrieter v. Barry L. Feinberg, M.D., P.C., No. 09-CV-5573, 2010 WL 334887, at *2 (S.D.N.Y. Jan. 29, 2010). Thus, the doctrine "does give rise to a partial defense on a theory of recoupment or setoff." Id. (denying plaintiff's motion to strike

affirmative defense asserting the faithless servant doctrine). Accordingly, the proposed Second Affirmative Defense states at least a colorable defense and the Court therefore GRANTS Defendants' motion for leave to add the proposed Second Affirmative Defense.

B.  <u>Defendants' Proposed Sixth and Seventh Affirmative Defenses of Failure to State a Claim Raise a Colorable Defense</u>

The proposed Sixth and Seventh Affirmative Defenses assert that Plaintiff has failed to state a causes of action against defendants Alex Gavrilov and Irina Gavrilov. (<u>See</u> PAAC ¶¶ 10-11.) At this stage, these affirmative defenses raise a colorable defense and the Court therefore GRANTS Defendants' motion for leave to add the proposed Sixth and Seventh Affirmative Defenses.

C.  <u>Defendants' Proposed Fourth and Fifth Affirmative Defenses of Collateral Estoppel and Res Judicata Are Futile</u>

Finally, Defendants also seek leave to convert the allegations of paragraph 10 of the Disgorgement Counterclaim to affirmative defenses of collateral estoppel and res judicata. (<u>See</u> PAAC ¶¶ 8-9.) The Disgorgement Counterclaim alleged that Plaintiff applied for unemployment benefits after his termination from Concord and that the New York State Department of Labor subsequently issued a notice of determination finding that Plaintiff was in fact accepting financial kickbacks from Concord's

drivers.  (Countercl. ¶ 10.)  Thus, according to Defendants, Plaintiff is precluded from litigating the issue of "whether or not Plaintiff accepted payments from the Concord drivers . . . ." (PAAC ¶¶ 8-9.)  The Court disagrees that these are proper affirmative defenses because the Department of Labor's alleged determination would not have preclusive effect in this action under New York law.

When a state agency "'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Obiajulu v. City of Rochester, 975 F. Supp. 469, 471 (W.D.N.Y. 1997) (quoting Univ. of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986)).  However, the New York State Labor Law expressly prohibits unemployment proceedings from having any preclusive effect in subsequent litigation, with a few enumerated exceptions, all of which do not apply in this case.  Section 623(2) of the New York State Labor Law states:

> No finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding; provided, however, that this subdivision shall not apply to causes of action which (i) arise under this article, (ii) seek to collect or challenge liability for unemployment

17

> insurance contributions, (iii) seek to recover overpayments of unemployment insurance benefits, or (iv) allege that a claimant or employer was denied constitutional rights in connection with the administrative processing, hearing, determination or decision of a claim for benefits or assessment of liability for unemployment insurance contributions.

N.Y. LAB. LAW § 623(2). Applying this statute, numerous district courts in this Circuit and state courts in New York have declined to give preclusive effect to decisions rendered in unemployment proceedings. See, e.g., Cody v. Darden Restaurants, No. 12-CV-0484, 2012 WL 6863922, at *4 (E.D.N.Y. Oct. 11, 2012) ("[Labor Law § 623(2)] has been interpreted to bar Department of Labor decisions such as the one rendered in this action from having a preclusive effect in subsequent litigation."), report and recommendation adopted by 2013 WL 170367 (E.D.N.Y. Jan. 11, 2013); Payton v. City Univ. of N.Y., 453 F. Supp. 2d 775, 787 (S.D.N.Y. 2006) ("Labor Law § 623(2) provides that unemployment proceedings have no preclusive effect on court proceedings."); Strong v. N.Y. City Dep't Educ., 62 A.D.3d 592, 593, 880 N.Y.S.2d 39, 40 (1st Dep't 2009) ("[T]he finding of the Unemployment Insurance Appeal Board that petitioner did not engage in corporeal punishment lacks preclusive effect." (citing N.Y. LAB. LAW § 623(2))); Wooten v. N.Y. City Dep't of Gen. Servs., 207 A.D.2d 754, 754, 617 N.Y.S.2d 3, 4 (1st Dep't 1994) ("The determination of the Unemployment Insurance Appeal Board that petitioner was terminated in retaliation for

18

filing a complaint is without preclusive effect in this action."). Thus, Defendants' collateral estoppel and res judicata defenses are futile because they are legally insufficient under New York law.

Even if Labor Law § 623 did not apply, however, the Department of Labor's notice of determination would not have preclusive effect here because unreviewed quasi-judicial administrative determinations are given preclusive effect only if the agency is "acting in adjudicatory, as opposed to investigatory, capacity . . . . [and] employ[s] procedures substantially similar to those used in a court of law." McLean v. Metro. Jewish Geriatric Ctr., No. 11-CV-3065, 2013 WL 5744467, at *6 (E.D.N.Y. Oct. 23, 2013) (internal quotation marks and citations omitted). Here, Defendants only allege that Plaintiff submitted a claim for unemployment benefits to the Department of Labor and that, after reviewing the information, the Department issued a "notice of determination." Defendants do not allege that the Department held a hearing nor do they allege that Plaintiff had the opportunity to challenge Defendants' evidence. In fact, they allege that no appeal took place, making it clear that there were no quasi-judicial proceedings. The Court cannot apply preclusive effect to this type of administrative proceeding. See id. (finding that "Determination and Order" of the New York State Division of Human Rights did not have preclusive effect because, inter alia, the

Division did not hold a "confrontation conference" where "the parties have the opportunity to present evidence and confront each other's witnesses and evidence"); <u>Miner v City of Glens Falls</u>, No. 89-CV-0918, 1992 WL 349668, at *15-16 (N.D.N.Y. Nov. 12, 1992) (finding that "Notice of Determination" issued by the New York State Department of Labor did not have preclusive effect because "[n]ot until plaintiff appealed the decision, and an Administrative Law Judge ("ALJ") held a series of hearings and made findings of fact after giving the parties an opportunity to litigate disputed issues, did the type of administrative proceeding occur to which this court must accord collateral estoppel effect"), <u>aff'd</u>, 999 F.2d 655 (2d Cir. 1993). Accordingly, Defendants' proposed Fourth and Fifth Affirmative Defenses of collateral estoppel and res judicata are futile and Defendants' motion to add these defenses is DENIED.

CONCLUSION

For the foregoing reasons, Defendants' motion for leave to amend their Answer and Counterclaim is GRANTED IN PART and DENIED IN PART, Plaintiff's motion to dismiss Defendants' Disgorgement Counterclaim is DENIED, and Plaintiff's request to strike paragraph 10 of the Disgorgement Counterclaim is DENIED AS MOOT.

Defendants' motion for leave to amend is GRANTED insofar as it amplifies the factual allegations supporting the

Disgorgement Counterclaim, deletes paragraph 10 of the Disgorgement Counterclaim, and adds the proposed Second, Sixth, and Seventh Affirmative Defenses. Defendants' motion for leave to amend is DENIED insofar as it seeks to add the proposed Second and Third Counterclaims and the proposed Fourth and Fifth Affirmative Defenses.

The Clerk of the Court is directed to docket the proposed Amended Answer and Counterclaim as the operative Answer and Counterclaim. However, the Amended Answer and Counterclaim remains operative only to the extent that it is consistent with the Court's rulings explained above.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     January __24__, 2014
           Central Islip, NY